IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VERALEO, LLC,<br>7272 Wisconsin Ave<br>9th Floor<br>Bethesda, Maryland 20814<br><br>    Plaintiff,<br><br>v.<br><br>ABIGAIL REIMAN,<br>1913 Barbee Street<br>McLean, Virginia 22101<br><br>    Defendant. | CIVIL ACTION NO.: _____ |

## COMPLAINT

Plaintiff VerAleo, LLC ("VerAleo"), by and through its undersigned counsel, alleges the following against Defendant Abigail Reiman, upon personal knowledge with respect to itself and its actions and otherwise upon information and belief.

### PARTIES

1. VerAleo is a Wyoming limited liability company with a principal place of business in Bethesda, Maryland. VerAleo has three members: Kyle Huffstetler, who is a natural person domiciled in Maryland; Michael Huffstetler, who is a natural person domiciled in Maryland; and Caroline Olsen, who is a natural person domiciled in Vermont. VerAleo is therefore a citizen of Maryland and Vermont.

2. Abigail Reiman is a natural person domiciled at 1913 Barbee Street, McLean, Virginia 22101, and is therefore a citizen of Virginia.

## JURISDICTION

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties and an amount in controversy in excess of $75,000.00.

4. This Court has personal jurisdiction over Defendant Reiman because she transacts business in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## VENUE

5. Venue is proper in the District of Maryland under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to VerAleo's claims occurred within the District.

## FACTUAL ALLEGATIONS

I. **VerAleo provides ERC services and utilizes referral agents as a part of its business model to connect with and secure potential clients.**

6. During the COVID-19 Pandemic, state and local governments around the country shut down businesses as part of the effort to slow the spread of the virus. The shutdowns created substantial hardships for thousands of small businesses, and, in turn, their employees.

7. To ameliorate the financial strain caused by the shutdowns, the federal government implemented relief programs for affected individuals and businesses, including the Employee Retention Credit ("ERC"). The ERC is a refundable tax credit for businesses that continued to pay employees during the COVID-19 pandemic and who either: (a) had a suspension of the operation of their trade or business due to orders from appropriate governmental authorities, or (b) had significant declines in quarterly gross receipts from March 13, 2020, to December 31, 2021.

8. The IRS's requirements for ERC were complex. VerAleo, an advisory consulting firm, began offering services to businesses that needed help navigating the ERC requirements to

determine if they were eligible. VerAleo enters into engagement agreements with the businesses by which they become VerAleo clients. Those engagement agreements also provide that VerAleo would be the exclusive provider of ERC-related services for those clients.

9. VerAleo uses referral agents to make introductions to businesses that would potentially benefit from VerAleo's services and help with the ERC process once the client has been engaged. VerAleo enters into referral agreements with its referral agents whereby those agents agree to exclusively refer clients to VerAleo.

10. On February 7, 2023, Quintin Kreutzer voluntarily entered into a Confidential Referral Fee & Confidentiality & Non-Compete & Non-Circumvention Agreement with VerAleo (the "Referral Agreement"). *See* Exhibit A.

11. Pursuant to the Referral Agreement, Kreutzer agreed to refer entities for ERC services exclusively to VerAleo. *See* Exhibit A at § 7.

12. Specifically, Kreutzer:

> agree[d] not to circumvent the use of VerAleo to obtain . . . ERC Credits on behalf of Potential Clients, nor to attempt to accelerate Client's receipt of its ERC Credits using a person or entity not provided to Client by VerAleo, nor to compete with VerAleo to obtain ERC Credits and/or accelerated financing thereof on behalf of other potential clients other than as an affiliate of VerAleo via a separate Referral Agreement whereby such affiliate refers such other potential clients to VerAleo, nor to use a third party to obtain such ERC Credits on behalf of Potential Clients, nor to compete with VerAleo to obtain ERC Credits or accelerated financing on behalf of Potential Clients.

*See* Exhibit A at § 7.

**II.    Reiman uses her business relationship to leverage names of potential clients and intentionally cause Kreutzer to circumvent the Referral Agreement.**

13. While working at KLNB, a real estate brokerage, Reiman became aware that Kreutzer had signed the Referral Agreement with VerAleo to refer potential clients for ERC

3

services. Specifically, Reiman knew that Kreutzer signed that contract with VerAleo to introduce businesses that might benefit from ERC Services and help secure those prospective clients exclusively on VerAleo's behalf.

14. Not only was Reiman aware of the Referral Agreement, but she entered into an oral agreement with Kreutzer to assist in referrals in exchange for a percentage of Kreutzer's referral fees.

15. Based on the oral agreement, Reiman began working with Kreutzer to determine prospective clients that could benefit from ERC services.

16. Despite her knowledge of the Referral Agreement and her personal oral agreement with Kreutzer to receive fees based on his Referral Agreement with VerAleo, Reiman began forming a business relationship with another ERC provider to circumvent or render impossible Kreutzer's performance of the Referral Agreements. Reiman worked alongside Kreutzer to identify prospective clients in need of ERC services. Once equipped with names of prospective clients, however, Reiman did not reserve those referrals for VerAleo. Instead, Reiman worked with Kreutzer to funnel prospective clients to other ERC service providers.

**III.   Reiman's actions caused VerAleo harm.**

17. Forming such business relationships with and referring potential clients to VerAleo's direct competitor was a breach of the exclusivity provisions within Kreutzer's Referral Agreement.

18. As a result of Reiman's unlawful behavior, VerAleo has suffered harm.

19. Specifically, Reiman's intentional actions to work with Kreutzer to provide other ERC service providers with the names of prospective clients deprived VerAleo of the exclusivity

for potential clients it bargained for within the Referral Agreement with Kreutzer and deprived VerAleo of specific client relationships and profit.

20. As a result of Reiman working with Kreutzer to provide a list of multiple clients to a direct competitor, VerAleo has been damaged by Kreutzer's breaches of the Referral Agreement in excess of $75,000.

## CAUSE OF ACTION

### Count I – Tortious Interference with Contract

21. VerAleo repeats and realleges each and every allegation set forth above in paragraphs 1 to 20 as if fully set forth herein.

22. In Maryland, the tort of intentional interference with contractual relations has the following six elements: (1) an existing contract or legally protected interest with a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intent to breach or render contractual performance impossible; (4) the defendant's lack of justification; (5) the third party's subsequent breach; and (6) damages to the plaintiff. *See Brass Metal Prods., Inc. v. E-J Enters., Inc.*, 984 A.2d 361, 383 (Md. Ct. Spec. App. 2009).

23. VerAleo has a Referral Agreement with Kreutzer, who was actively working to secure clients who would benefit from VerAleo's ERC services.

24. Reiman had specific knowledge of VerAleo's contractual relation with Kreutzer established within the Referral Agreement, including Kreutzer's exclusivity obligation.

25. Reiman used unlawful means to intentionally interfere with VerAleo's contractual relationship with Kreutzer. Specifically, Reiman utilized her relationship with Kreutzer to garner the names of prospective clients and worked with Kreutzer to provide those names to VerAleo's direct competitors. In so doing, Reiman intended for Kreutzer to breach his contract with VerAleo.

26. In working with Kreutzer to breach his contract with VerAleo, Reiman interfered with VerAleo's contractual relationship with Kreutzer for her own personal and financial gain.

27. As a result of the actions described above, Reiman successfully caused and/or induced Kreutzer to breach or render impossible his exclusivity obligations defined within the Referral Agreement, consequently breaching his Referral Agreement.

28. Reiman's conduct caused VerAleo harm due to the disruption of VerAleo's contractual relations with Kreutzer, depriving VerAleo of specific client relationships and profit. Specifically, VerAleo has suffered economic injury in the amount of at least $250,000, including lost sales, lost profits, and other compensatory damages as a direct and proximate cause of Reiman's actions described above.

29. Reiman's conduct was committed without justification and with actual malice, entitling VerAleo to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff VerAleo, LLC demands judgment against Defendants Abigail Reiman in the amount of at least **$250,000.00**, plus pre-judgment interest, post-judgment interest, punitive damages in an amount to be determine at trial and such further relief as this Court deems just and proper in the circumstances.

Dated: July 10, 2025                                  Respectfully submitted,

*/s/ Brian L. Moffet*
Brian L. Moffet (Fed. Bar No. 13821)
Katherine E. Coyle (Fed. Bar No. 31419)
**MILES & STOCKBRIDGE P.C.**
100 Light Street
Baltimore, Maryland 21202
bmoffet@milesstockbridge.com
kcoyle@milesstockbridge.com
(410) 385-3656

H. William Bloom III (to be admitted *pro hac vice*)
**MAYNARD NEXSEN PC**
770 Washington Avenue
RSA Plaza, Suite 421
Montgomery, Alabama 36104
(205) 254-1056
wbloom@maynardnexsen.com

Madison Peace Nye (to be admitted *pro hac vice*)
Stephanie Lynge (to be admitted *pro hac vice*)
**MAYNARD NEXSEN PC**
1901 Sixth Avenue North
Suite 1700
Birmingham, Alabama 35203
(205) 254-1056
mnye@maynardnexsen.com
slynge@maynardnexsen.com

*Counsel for VerAleo, LLC*